## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**QATONIOUS LEE SIRKANEO,** *also known as*                    **PETITIONER**
**WALTER ALLEN BROOKS,**
**ADC #105681**

**VS.**                    **NO. 4:23-cv-00419-KGB-ERE**

**DEXTER PAYNE,**
**Director Arkansas Division of Correction**                    **RESPONDENT**

## <u>RECOMMENDED DISPOSITION</u>

This Recommendation has been sent to United States District Judge Kristine

G. Baker. You may file written objections to all or part of this Recommendation.

Any objections filed must: (1) specifically explain the factual and/or legal basis for

the objection; and (2) be received by the Clerk of this Court within fourteen days of

the date of this Recommendation. If you do not object, you risk waiving the right to

appeal questions of fact and Judge Baker can adopt this Recommendation without

independently reviewing the record.

## I.    INTRODUCTION

Pro se petitioner Lee Sirkaneo,  an inmate at the Varner Supermax Unit of the

Arkansas Division of Correction, seeks a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254. The Court recommends that Mr. Sirkaneo's amended petition be dismissed

with prejudice because each claim asserted is either procedurally defaulted, not

reviewable under 28 U.S.C. § 2254(d), or unreviewable in federal habeas.

## II.    PROCEDURAL BACKGROUND

In 2012, a St. Francis County, Arkansas jury convicted Mr. Sirkaneo with the first-degree murder of Anna Mae Banks and the attempted first-degree murder of Nathaniel Banks. *Brooks v. State*, 2014 Ark. App. 84, 1, 2014 WL 580144, at *1 (2014). On direct appeal, the Arkansas Court of Appeals remanded for retrial because the trial court had refused Mr. Sirkaneo's proffered jury instruction on accomplice liability. *Id*.

On retrial, Mr. Sirkaneo waived his right to counsel and represented himself, and on April 6, 2017, a second St. Francis County jury convicted him of first-degree murder and attempted first degree murder. Mr. Sirkaneo was sentenced as a habitual offender to life in prison for first-degree murder, thirty years for attempted first-degree murder, and fifteen years on a firearm enhancement, all sentences to run concurrently. *Doc. 18-5 at 110-117*.

On March 29, 2018, the Arkansas Supreme Court permitted Mr. Sirkaneo to file a belated appeal and appointed counsel to represent him. *Doc. 18-12 at 4-5*. Mr. Sirkaneo's only argument on appeal was that the trial court erred in denying his motion for a mistrial based on testimony regarding his post-arrest silence. *Sirkaneo v. State*, 586 S.W.3d 606, 607, 2019 Ark. 308, 2 (2019).

On October 31, 2018, the Arkansas Supreme Court held that testimony regarding Mr. Sirkaneo's post-arrest silence did not violate his right to due process,

and it affirmed his second conviction. *Id.*, 586 S.W.3d at 608. In addition, pursuant to the automatic review procedure mandated under Arkansas Supreme Court Rule 4-3(i) and Ark. Code Ann. § 16-91-113(a), the court examined the record for all "objections, motions, and requests made by either party that were decided adversely to appellant [and found no] adverse ruling involved prejudicial error."[1] *Id.*

On December 9, 2019, Mr. Sirkaneo filed a petition for postconviction relief, pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. *State v. Sirkaneo*, No. 62-CR-10-301 (St. Francis Cty. Cir. Ct.).[2] On April 22, 2021, the circuit court entered a written order denying the petition without a hearing.

On appeal, the Arkansas Supreme Court considered only those claims that Mr. Sirkaneo raised in his Rule 37 petition and reasserted on appeal: (1) he was denied the right to confront his accuser; (2) appellate counsel rendered ineffective assistance by failing to challenge the sufficiency of evidence supporting his conviction; (3) trial counsel was ineffective by failing to investigate DNA found on clothing seized from Sirkaneo and others; (4) the trial court erred by failing to

---

[1] Two justices dissented on the ground that the trial court erred in finding that Mr. Sirkaneo knowingly and intelligently waived his right to counsel. *Sirkaneo v. State*, 586 S.W.3d 606, 609 (2019) (Wynne, J., dissenting).

[2] Respondent provided a copy of a Rule 37 petition filed by Mr. Sirkaneo on July 17, 2017 (*Doc. 18-5, at 212-219*), which the trial court denied as premature because Mr. Sirkaneo's conviction was then on direct appeal. *Id. at 247*. The Court has verified the contents of Mr. Sirkaneo's Rule 37 petition filed on December 9, 2019 by accessing the public record, accessible at https://caseinfo.arcourts.gov/cconnect/PROD/public.

exclude evidence seized and statements made in connection with his unlawful arrest; and (5) the prosecution made inappropriate closing remarks connecting the murder weapon to Mr. Sirkaneo. *Sirkaneo v. State*, 644 S.W.3d 392, 397 (2022).

The Arkansas Supreme Court determined that Mr. Sirkaneo had abandoned the following arguments that he had presented in his Rule 37 petition but did not reassert on appeal: (1) pretrial counsel failed to object to the admission of evidence excluded from evidence at is first trial; (2) pretrial counsel failed to file a motion to suppress evidence regarding the murder weapon; and (3) the trial court held a "disposition hearing" without Mr. Sirkaneo present. *Id*., at 398 (noting that "arguments made to the trial court but not included in arguments on appeal are considered abandoned).

In addition, Mr. Sirkaneo raised the following claims for the first time on postconviction appeal, all of which the Arkansas Supreme Court held were not preserved for appellate review:

> (1) trial counsel failed to challenge Sirkaneo's waiver of counsel as voluntarily and intelligently made; (2) the trial court failed to conduct a competency hearing; (3) appellate counsel failed to raise the Confrontation Clause issue on appeal; (4) appellate counsel failed to raise issues on appeal regarding prosecutorial misconduct during closing argument where the prosecutor commented on Sirkaneo's silence, asked the jury to disregard DNA evidence, and told the jury that it was obligated to protect the community against career criminals; (5) appellate counsel failed to challenge on direct appeal the lack of a suppression hearing; [and] (6) standby counsel was ineffective by failing to challenge the lack of evidence supporting the verdict, by failing to produce mitigation evidence, by failing to investigate two

material witnesses, by failing to investigate the criminal history of Nathaniel Banks and Nathaniel Britt, by failing to investigate alternative suspects, and by failing to investigate Sirkaneo's diminished capacity.

*Id.*, at 388 n.2.

On June 2, 2022, the Arkansas Supreme Court denied Mr. Sirkaneo's postconviction appeal, and on July 21, 2022, it denied his petition for a rehearing. *Id.*

On May 3, 2023, Mr. Sirkaneo filed a petition for habeas corpus in this Court pursuant to 28 U.S.C. § 2254 (*Doc. 1*), along with two addendums (*Docs 3, 4*). Because these lengthy filings were difficult to understand, he received an opportunity to clarify his claims. *Doc. 5.*

On May 31, 2023, Mr. Sirkaneo filed the amended § 2254 petition now before the Court (*Doc. 11*), asserting the following claims:

1. Ineffective assistance of direct appeal counsel for failing to raise the following claims:

   a. Ineffective assistance of pretrial counsel for failure to move to suppress evidence seized pursuant to an unlawful arrest and failure to investigate alternative suspects (*Doc. 11 at 6*);

   b. Prosecutorial misconduct based on improper closing arguments (*Id. at 7*);

   c. Trial error for violation of Mr. Sirkaneo's Confrontation Clause rights (*Id. at 9*);

   d. Trial error for denying a competency evaluation (*Id. at 10*);

    e.  Trial error for finding that Mr. Sirkaneo knowingly and intelligently waived his right to trial counsel (*Id.*); and

    f.  Insufficient evidence to support conviction. *Id.*

2. Insufficient evidence to support convictions.  *Id at 11-22.*

3. Prosecutorial misconduct conduct based on improper closing argument, knowing presentation of false testimony, and withholding evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *Id at 23.*

4. Fourth Amendment violation as a result of the introduction of evidence obtained as a result of illegal arrest.  *Id. at 27-29.*

5. Due process violation as a result of entry of judgment without a jury determination regarding accomplice liability.  *Id. at 30.*

6. Insufficient appellate review mandated under Arkansas Supreme Court Rule 4-3(i). *Id. at 31-32.*

7. Actual Innocence (gateway and freestanding) *Id. at 33-34.*

On July 13, 2023, Respondent filed a response (*Doc. 18*) seeking dismissal of the amended petition on grounds that each claim above is either procedurally defaulted, not subject to review pursuant to 28 U.S.C. § 2254(d),[3] or unreviewable in federal habeas.

On July 28, Mr. Sirkaneo filed a reply addressing Respondent's arguments for dismissal. *Doc. 27.*[4]

---

[3] This provision establishes the deferential review applied by federal habeas courts when reviewing claims resolved on the merits in state court.  See *infra* discussion at 14-15.

[4] On September 7, the Court directed Respondent to file pages 1622 through 1662 of the trial transcript, which were necessary for review of Mr. Sirkaneo's claim that the prosecution impermissibly commented on his silence at trial. *Doc. 28.*  Respondent filed the requested pages the same day. *Doc. 29.* On September 20, 2023, Mr. Sirkaneo filed an objection, asserting that

## III.    FACTUAL BACKGROUND

The Arkansas Supreme Court summarized the evidence introduced at Mr.

Sirkaneo's second trial as follows:

> The evidence adduced at trial demonstrated that at the time of the crime, Sirkaneo was in a relationship with Tammy Bernard, who lived in Widener, Arkansas. Bernard was a close neighbor of the two victims and lived with her sister, Marika Tiggs-Robinson, in a trailer that was located two houses down from the Bankses' residence.
>
> Nathaniel Britt, the victims' son, had been Bernard's previous boyfriend and had dated her for four years before she began dating Sirkaneo. Britt remained friends with Tiggs-Robinson and continued to visit the residence of the two sisters. Britt testified that he had attempted to visit Tiggs-Robinson the day before his mother's death and had spoken with Sirkaneo. According to Britt, the exchange with Sirkaneo was uncomfortable to such an extent that Britt called Bernard the following morning and complained about Sirkaneo's behavior toward him. Britt's comments led to an argument with Bernard, and she called Sirkaneo and told Sirkaneo about the argument and related Britt's criticism of him. Sometime after speaking with Bernard, Sirkaneo called Britt and asked if he was at home, and Britt replied that he was on his way to pick up supplies for work and would not be home for another several hours. Sirkaneo told Britt that he would be there when Britt got off work.
>
> Britt's father, Nathaniel Banks, testified that he and his wife, Anna Mae Banks, lived in Widener and that they returned to their house in their red van that morning after going to town for hog feed. Mr. Banks stated that as he and Anna Mae unloaded the bags of feed from their van, Anna

_____

Respondent had "omitted out important material" and that the "authentic material in the certified transcript pages 1622 through 1662" support his claims. *Doc. 30 at 2.*  On October 6, Mr. Sirkaneo filed pages of the trial transcript, numbered 1621 through 1662. *Doc. 31.* Although the transcript pages submitted by Respondent and Mr. Sirkaneo have different page numbers, the content important to the Court's review is *exactly* the same.

Mae was shot and fell to the ground. Mr. Banks turned around and found a man standing there who put a pistol in his face and pulled the trigger twice, but the gun misfired. The assailant then took off, turned around, pointed the gun at Mr. Banks, and pulled the trigger a third time, but it again misfired. Anna Mae was killed instantly. Mr. Banks called 911 but was unable to identify the shooter other than to say he was wearing a "do-rag" and sunglasses. A passerby who had witnessed the incident approached Mr. Banks as he was talking to the 911 dispatcher and described both the automobile and the direction the vehicle was traveling as it fled the scene. Mr. Banks further testified that he discovered a shell casing in the van the following day, and he called police who came and retrieved it.

Tiggs-Robinson testified that she was at home the morning of the crime. During that time, she received multiple calls from Sirkaneo that she ignored, but when she saw him run across her yard and jump into a car parked in her driveway, she answered the phone whereupon Sirkaneo asked her if the police were outside. Tiggs-Robinson testified that Sirkaneo's question about police prompted her to leave her home where she discovered that her neighbor, Anna Mae, had been shot.

The description provided in the 911 call of the vehicle and the direction it was traveling led to an investigation that quickly resulted in the apprehension of Sirkaneo and three other men in a vehicle traveling from Widener toward Hughes, Arkansas. The occupants of the vehicle were Earl Smith, the driver; Robert Brooks, Sirkaneo's brother; and Kipp Doolittle.

Smith and Doolittle testified at trial that Sirkaneo had paid them to take him to Widener. Smith testified that he understood the purpose of the trip was to allow Sirkaneo to pick up some clothes from Bernard's house. Smith stated that when they arrived in Widener, Sirkaneo directed them to park in front of Bernard and Tiggs-Robinson's home. Smith stated that Sirkaneo exited the car, made a call, and then returned to the vehicle and asked Smith to wait a couple of hours before returning home, but Smith refused to wait that long. According to Smith, Sirkaneo then stated that he would settle the matter with the "momma and daddy" and proceeded to clean bullets. Shortly after Sirkaneo was seen heading toward the Bankses' residence, Smith heard a gunshot. Upon his return, Sirkaneo told Smith, "I just execute style

the momma and tried to kill his daddy, but the gun jam, I guess this was his lucky day." Smith testified that while he was driving away from Widener, Sirkaneo threw his sunglasses out of the window. Smith further testified that when his vehicle was being stopped by police, Sirkaneo attempted to persuade the other passengers in the car to take possession of his gun, and when no one would take the gun, Sirkaneo hid it under the passenger seat. The gun and several bullets were seized from the car. Furthermore, the sunglasses were found with the assistance of Smith. A firearms expert testified that the cartridge recovered by Mr. Banks from inside the van matched the gun found in Smith's car. All witnesses testified that the gun seen in Sirkaneo's possession looked like the gun recovered  from Smith's car and introduced as evidence at trial. Doolittle testified and described the same events that Smith had described, including Sirkaneo's admission that he had shot the momma and tried to kill the daddy. In addition to the gun and bullets, gloves and a head covering were recovered from Smith's vehicle.

*Sirkaneo v. State*, 644 S.W.3d 392, 395–97 (2022).

## IV.    DISCUSSION

### A.    Claims 1(a)-(e) are Procedurally Defaulted

The Antiterrorism and Effective Death Penalty Act ("AEDPA") requires that a state prisoner  exhaust "remedies available" to him in state court before seeking federal habeas relief. 28 U.S.C. § 2254(b)(1)(A). In the interest of comity, when a state prisoner alleges that his continued confinement violates federal law, he "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

The exhaustion requirement is technically satisfied when a state procedural

rule makes a state remedy unavailable. However, under the independent and adequate state ground doctrine, "[w]here a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992); *Abdullah v. Groose,* 75 F.3d 408, 411 (8th Cir.1996)). Accordingly, when a petitioner fails to fully exhaust a federal claim in state court and the time for doing so has expired, the claim is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Likewise, a federal claim is procedurally defaulted when resolved by a state court pursuant to a state procedural rule or practice that was a "firmly established and regularly followed." *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991) (citations omitted).

A petitioner can obtain federal habeas review of a procedurally defaulted claim only if he can demonstrate: (1) cause for the default and actual prejudice resulting from the alleged violation of federal law;[5] or (2) that the failure to consider the claim will result in a fundamental miscarriage of justice, such as the conviction

---

[5] Cause for procedural default must be an external impediment that prevented the petitioner from complying with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, (1986). To demonstrate prejudice, a petitioner must show "not merely that the errors at trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions . . . [such that he] was denied fundamental fairness at trial." *Murra*y, 477 U.S. at 494 (internal quotation and punctuation omitted).

of one who is actually innocent. *Coleman*, 501 U.S. at 750.

Claims 1(a)-(f) of the amended petition fault appellate counsel for failing to raise the following claims on direct appeal: (a) ineffective assistance of trial counsel for failure to move for suppression of evidence ; (b) prosecutorial misconduct based on improper closing argument; (c) trial error for Confrontation Clause violation; (d) trial error for denying a competency evaluation; (e) trial error for finding that Mr. Sirkaneo knowingly and intelligently waived his right to trial counsel; and (f) insufficient evidence.

Mr. Sirkaneo failed to present claims 1(a), (d) and (e) at any point during post-conviction review, and time for doing so has expired.[6] Accordingly, claims 1(a), (d), and (e) are procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).

Mr. Sirkaneo attempted to present claims 1(b) and (c) on postconviction appeal, but because he had not included them in his Rule 37 petition, the Arkansas Supreme Court deemed the claims waived. *Sirkaneo*, 644 S.W.3d at 397-398, 397 n.2. It is well established under Arkansas law that, "Rule 37 does not provide a means to challenge the constitutionality of a judgment where the issue could have

---

[6] Mr. Sirkaneo argues that he raised the claims in his Rule 37 petition and brief on appeal from the denial of post-conviction relief. *Doc. 27 at 9*. But Mr. Sirkaneo's ineffective assistance of appellate counsel claims 1(a), (d), and (e) *do not* appear in his postconviction filings, and they are therefore procedurally defaulted.

been raised in the trial court." *Cigainero v. State*, 321 Ark. 533, 535–36 (1995) (citing *Bailey v. State,* 312 Ark. 180 (1993)).  Accordingly, the Arkansas Supreme Court resolved Mr. Sirkaneo's claims 1(b) and (c) on an adequate and independent state ground, and the claims are procedurally defaulted.

Mr. Sirkaneo fails to offer any facts or rational argument to support a finding of cause and prejudice to excuse his default of claims 1(a)-(e).[7]  He argues, however, that his actual innocence acts as a "gateway" permitting consideration of his procedurally defaulted claims.[8]  Mr. Sirkaneo's sole basis for claiming actual innocence is his belief that the prosecution presented insufficient evidence of his guilt. *Doc. 1 at 25-27; Doc. 27 at 14-15*. However, the standard for a gateway actual

---

[7] Mr. Sirkaneo argues that if his claims asserting ineffective assistance of appellate counsel are procedurally defaulted, it is the "result of the constitutionally ineffective assistance of direct appeal counsel."  *Doc. 27 at 10*. He proposes that appellate counsel's failure to raise a "dead-bang winner" on direct appeal somehow prevented him from fully and properly exhausting claims 1(a)-(e) in the trial court on postconviction review. This argument is entirely frivolous.

Mr. Sirkaneo understandably does not invoke the narrow exception to the procedural default rule established under in *Martinez v. Ryan*, 566 U.S. 1 (2012), which applies to substantial, ineffective assistance of trial counsel claims but has not been extended to claims asserting ineffective assistance of appellate counsel. *Davila v. Davis*, 582 U.S. 521, 530 (2017) (137 S. Ct. 2058 (2017) (declining to extend *Martinez* to allow a federal court to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate counsel).

[8] The Eighth Circuit has instructed that a gateway actual innocence claim must satisfy a two-part test: "First, the petitioner's allegations of constitutional error must be supported with new reliable evidence not available at trial." *Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001) (citing *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)). "The evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." *Amrine v. Bowersox*, 128 F.3d 1222, 1230 (8th Cir. 1997). "Second, the petitioner must establish 'that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Armine*, 238 F.3d at 1023 (quoting *Schlup*, 513 U.S. at 327)).

innocence claim is "by no means" equivalent to the standard governing a claim asserting insufficient evidence. *House v. Bell*,  547 U.S. 518, 538–39 (2006).  The actual innocence standard requires a federal court to assess how reasonable jurors would react to *new* evidence that the trial jury did not have before it, not the evidence presented at trial. *Id*.  Mr. Sirkaneo provides no new, reliable evidence of actual innocence to justify a merits review of any of these defaulted claims. Claims 1(a)-(e) should be dismissed, with prejudice.

### B.    The Arkansas Supreme Court's Adjudication of Claim 1(f) is Due Deference Under 28 U.S.C. § 2254(d)

For claim 1(f), Mr. Sirkaneo faults his attorney on direct appeal for failing to argue insufficient evidence.

The trial court rejected the same claim based on misconceptions that ineffective-assistance-of-appellate counsel claims are not cognizable in Rule 37 proceedings and that Mr. Sirkaneo represented himself on direct appeal. *State v. Sirkaneo*, No. 62-CR-10-301 (St. Francis Cty. Cir. Ct. April 22, 2019).

Although the trial court rejected Mr. Sirkaneo's claim for the wrong reasons, the Arkansas Supreme Court affirmed, holding that a challenge to the sufficiency of evidence would have failed on appeal, and appellate counsel was not ineffective for

failing to pursue an unmeritorious claim. *Sirkaneo v. State*, 644 S.W.3d 392, 398 (2022).[9]

Respondent asserts that claim 1(f) fails under the deferential standard of review for state court decisions mandated by the Antiterrorism and Effective Death Penalty Act's ("AEDPA"), codified at 28 U.S.C. § 2254(d).

Section 2254(d) provides that when a state prisoner's federal claim has been adjudicated on the merits in state court, a federal court "shall not" grant an application for habeas relief unless the state courts' adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court;[10] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[11] "The question under [the]

---

[9] Arkansas Supreme Court Justice Barbara Webb dissented. *Sirkaneo v. State*, 644 S.W.3d 392, 400 (2022) (Webb , J., dissenting).   Because the trial court rejected Mr. Sirkaneo's claim on erroneous grounds without a hearing, Justice Webb believed that the court should have remanded for a hearing.

[10] A state court decision is "contrary to" clearly established federal law if the state court either "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

[11] The state court's factual findings are subject to a deferential standard of review and presumed correct unless the petitioner can rebut those findings through "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also *James v. Bowersox*, 187 F.3d 866, 871 (8th Cir. 1999).

AEDPA is thus not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable—'a substantially higher threshold' for a prisoner to meet." *Shoop v. Twyford*, 142 S. Ct. 2037, 2043 (2022) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

In assessing Mr. Sirkaneo's claim that appellate counsel was ineffective by failing to argue insufficient evidence, the Arkansas Supreme Court properly applied the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which required that Mr. Sirkaneo show that (1) counsel's performance was deficient *and* (2) the deficient performance prejudiced his defense. *Sirkaneo*, 644 S.W.3d at 397. In deciding that Mr. Sirkaneo failed to meet his burden under *Strickland*, the Arkansas Supreme Court evaluated his proposed evidentiary challenge by applying the standard endorsed by the United States Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 319 (1979): "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

After reviewing the evidence supporting Mr. Sirkaneo's convictions,[12] the Arkansas Supreme Court reasonably concluded that challenging evidence of his guilt

---

[12] Mr. Sirkaneo does not challenge the Arkansas Supreme Court's recitation of facts. The Court presumes those facts to be correct as required under § 2254(e)(1).

would be fruitless, negating the chance that counsel's failure to raise such a claim

could be unreasonable or prejudicial.  The court explained:

> In reviewing a challenge to the sufficiency of the evidence, the evidence
> is viewed in the light most favorable to the State, and only the evidence
> that supports the verdict is considered. *Collins v. State*, 2021 Ark. 35,
> 617 S.W.3d 701. A conviction is affirmed if substantial evidence
> supports it. *Id.* Substantial evidence is evidence of sufficient force and
> character that it will, with reasonable certainty, compel a conclusion
> without resorting to speculation or conjecture.
>
> The substantial evidence supporting Sirkaneo's conviction is as
> follows: Sirkaneo traveled to Widener the day of the crime with three
> others, and Sirkaneo was the only passenger in the vehicle that had any
> connection to the two victims; Sirkaneo was seen cleaning bullets
> before walking toward the Bankses' residence; Sirkaneo was placed at
> the Bankses' residence at the time a shot was heard by both Smith and
> Doolittle; Sirkaneo was seen running away from the crime scene by his
> girlfriend's sister, Tiggs-Robinson; Sirkaneo telephoned Tiggs-
> Robinson as he fled the scene and asked if police were in the area;
> Sirkaneo admitted to Smith and Doolittle that he committed the crimes;
> and Sirkaneo possessed the murder weapon that, according to Smith
> and Doolittle, Sirkaneo attempted to hide when police intercepted
> Smith's vehicle. Viewing the evidence in the light most favorable to the
> State, any challenge to the sufficiency of the evidence supporting the
> conviction would have been without merit.

*Sirkaneo,* 644 S.W.3d 392, 398 (2022).

The Arkansas Supreme Court's decision rejecting claim 1(f) on the merits is

entitled to deference under § 2254(d). Claim 1(f) should be dismissed, with

prejudice.

### C.    The Arkansas Supreme Court's De Facto Adjudication of Claim 2 is Due Deference Under 28 U.S.C. § 2254(d)

In Claim 2, Mr. Sirkaneo brings a stand-alone claim asserting insufficient evidence. The Arkansas Supreme Court specifically addressed the sufficiency of evidence supporting Mr. Sirkaneo's conviction in connection with his claim that appellate counsel rendered ineffective assistance.[13]  For reasons stated in connection with claim 1(f), the Arkansas Supreme Court's rejection of Mr. Sirkaneo's claim asserting insufficient evidence, whether an independent claim or part of ineffective assistance of counsel claim, is entitled to deference under § 2254(d).  Claim 2 should be dismissed, with prejudice.

### D.    Claim 3 Arguments are Procedurally Defaulted

In claim 3, Mr. Sirkaneo asserts prosecutorial misconduct on three grounds: (1) improper closing arguments; (2) knowing presentation of false testimony; and

---

[13] Although the Court finds no Eighth Circuit case on point, the Seventh, Sixth, and Third Circuits have held that when a state court addresses a state prisoner's federal claim in the process of resolving another claim or issue, the federal claim is deemed adjudicated on the merits for purposes of § 2254(d). See *Smith v. Warden, Toledo Correctional Institution*, No. 20-3472, 2022 WL 601860, at *4 (6th Cir. March 1, 2022) ("Nothing requires a state court to conduct its analysis under the heading of a specific federal constitutional right to adjudicate it on the merits."); *Bennett v. Brewer*, 940 F.3d 279, 290–91 (6th Cir. 2019) (holding that state court's rejection of ineffective assistance of trial counsel claim for lack of prejudice also served as a merits decision for an ineffective assistance of appellate counsel claim as to same underlying error); *Sturgeon v. Chandler*, 552 F.3d 604, 612 (7th Cir. 2009) (holding that state court's evaluation of competency hearing in context of ineffective assistance claim effectively reached merits of related due process claim based on lack of competency hearing); *Albrecht v. Horn*, 485 F.3d 103, 116 (3d Cir. 2007) (holding that evaluation of constitutionality of sentencing instructions in the context of an ineffective assistance claim amounted to an adjudication on the merits of stand-alone claim on same issue under § 2254(d)).

(3) withholding evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

*Doc. 11 at 23-26*. Respondent argues that these claims are procedurally defaulted

because Mr. Sirkaneo failed to raise each claim both at trial and on direct appeal.

*Doc.18 at 26-27*.

### 1.    Improper Closing Argument

Mr. Sirkaneo claims that the prosecution's closing arguments violated his

right to due process by: (1) connecting him to the charged crimes without producing

an "accuser witness"[14] and in contravention of witness testimony (*Id. at 25-26*); and

(2) commenting on his decision not to testify. *Id. at 30*.

Regarding the first claim, Mr. Sirkaneo failed to make a contemporaneous

objection that the prosecutor's closing remarks were unsupported by  an "accuser

witness" or refuted by other witnesses.[15] He argues that his procedural default is

---

[14] In a related claim in his Rule 37 petition, Mr. Sirkaneo argued that the prosecution's failure to produce his "accuser" violated his fundamental right to confront and cross examine witnesses against him. *Sirkaneo v. State*, 644 S.W.3d 392, 398 (2022). He alleged that an officer at the crime scene received information from an unidentified "accuser" that he was the shooter, which led to his arrest. However, the Arkansas Supreme Court noted that "any reference to the statement that Sirkaneo was the shooter was elicited by Sirkaneo during cross-examination" and that his claim, which alleged trial error, could not be raised on postconviction review. *Id*.

[15] Respondent states that this claim was addressed and rejected on postconviction appeal. *Doc. 18 at 27*. The Arkansas Supreme Court addressed a similar claim, not this one.  Specifically, Mr. Sirkaneo argued in his Rule 37 petition and on postconviction appeal that the prosecution made speculative arguments connecting the murder weapon to him. In affirming the denial of postconviction relief, the Arkansas Supreme Court noted that a firearm expert connected spent cartridge casings at the crime scene to a gun recovered from the vehicle that Mr. Sirkaneo occupied after the shooting. *Sirkaneo*, 644 S.W.3d at 400. The Arkansas Supreme Court added: "In any event, a claim of alleged prosecutorial misconduct should have been raised at trial or on direct appeal and may not be raised for the first time in a Rule 37 petition." *Id*. (citing *Howard v. State*,

excused by reason of ineffective assistance of counsel on direct appeal. *Doc 27 at 13*.

An attorney's errors on direct appeal may provide cause for a procedural default. *Martinez v. Ryan*, 566 U.S. 1, 11 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 754 (1991)) ("[F]or if the attorney appointed by the State to pursue the direct appeal is ineffective, the prisoner has been denied fair process and the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claims."). Here, however, Mr. Sirkaneo has no basis for an ineffective assistance claim.

Generally, "Arkansas does not recognize plain error, i.e., an error not brought to the attention of the trial court by objection but nonetheless affecting substantial rights of the defendant." *Smith v. State*, 343 Ark. 552, 574 (2001) (citing *State v. Robbins,* 342 Ark. 262 (2000)). An exception exists when a trial court has a duty to intervene, without an objection, to correct a serious error either by an admonition to the jury or by ordering a mistrial. *Wicks v. State,* 270 Ark. 781, 606 S.W.2d 366 (1980). A careful review of the prosecution's closing remarks reveals no such error. The prosecutor merely recounted the evidence presented and, with no mention of an unidentified accuser, explained why the evidence supported guilty findings.

---

238 S.W.3d 24 (2006)).

Appellate counsel was not ineffective for failing to pursue an unmeritorious, unpreserved argument on direct appeal.

Next, Mr. Sirkaneo claims that the prosecutor improperly commented on his silence. He made a contemporaneous objection at trial and argues that counsel's failure to pursue the claim on direct appeal excuses his procedural default.

Comments regarding a defendant's failure to take the stand and testify on his own behalf violate the accused's Fifth Amendment right against compulsory self-incrimination. *Griffin v. California,* 380 U.S. 609, 615 (1965). "Indirect comments constitute a constitutional violation if they manifest the prosecutor's intent to call attention to a defendant's failure to testify or would be naturally and necessarily taken by a jury as a comment on the defendant's failure to testify. *Graham v. Dormire*, 212 F.3d 437, 439–40 (8th Cir. 2000) (citation omitted). "Prosecutorial comments, however, must be examined in context, and a prosecutor need not remain mute when the defendant himself raises the testimonial issue." *Id*. (citing *United States v. Robinson,* 485 U.S. 25, 33 (1988)). "[W]here . . . the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, . . . there is no violation of the privilege [against compulsory self-incrimination]." *Id.* (quoting *Robinson*, 485 U.S. at 32).

Here, Mr. Sirkaneo did not testify at trial, but in his closing remarks, he repeatedly professed his innocence. *Doc. 18-7 at 408, 413.* In addition, he suggested

that Kipp Doolittle and Earl Smith, who both testified that Mr. Sirkaneo admitted

shooting the victims and possessed and attempted to hide the weapon, were lying.

*Id. at 408, 417.*

> In rebuttal argument, the prosecutor began:
>
> Ladies and gentlemen, what you've got to remember is that what . . .
> [Mr. Sirkaneo] tells you standing up here is not testimony. He was not
> sworn to tell the truth when he stood up here and talked to you. He was
> not cross examined. So, he can say pretty much anything he wants and
> get away with it.

*Doc 29-1 at 7.* The prosecutor also addressed Mr. Sirkaneo's arguments regarding

the testimony of Doolittle and Smith:

> [T]hey got up here on this witness stand, [and] had the guts to take an
> oath and testify and be cross examined. *Doc. 29-1 at 9.*

Mr. Sirkaneo objected: [T]hat statement he just made about 'they had the guts to get

up there and testify,' he [said] that against me because I didn't get up there and

testify." *Doc. 29-1 at 9-11.* In a sidebar ruling (*Id. at 11-12*), the trial court overruled

Mr. Sirkaneo's objection but cautioned the prosecution against any argument that

contradicted the court's jury instruction that a criminal defendant has "an absolute

right not to testify" and that "the fact that a defendant does not testify is not evidence

of guilt or innocence and under no circumstances shall be considered by you in

arriving at your verdict." *Doc. 18-7 at 374.*

The prosecution's correct statement of law, that Mr. Sirkaneo's closing

remarks did not qualify as sworn testimony, was a fair response to Mr. Sirkaneo's

adamant declaration of innocence during his closing remarks. In addition, the prosecutor's comments crediting Doolittle and Smith for testifying made no direct reference to Mr. Sirkaneo's silence, nor did they manifest an intent to call attention to Mr. Sirkaneo's silence as evidence of his guilt. A reasonable juror would not naturally and necessarily take the comments as a comment on Mr. Sirkaneo's silence.

Appellate counsel's failure to challenge the State's closing remarks did not constitute ineffective assistance and does not excuse Mr. Sirkaneo's procedural default. In addition, Mr. Sirkaneo's related ineffective assistance claim is procedurally defaulted, see *supra* Section IV.A, and therefore cannot serve as cause for another procedurally defaulted claim. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (holding that an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can *itself* be procedurally defaulted).

### 2. Knowing Presentation of False Testimony

Mr. Sirkaneo claims that the State knowingly elicited false identification testimony from victim Nathaniel Banks.[16] *Doc. 11 at 23*. He contends the

---

[16] Evidence at trial established that immediately after his wife's murder and his attempted murder, Mr. Banks told a 911 operator that the shooter had short hair and wore a red shirt and blue jeans. *Doc. 18-6 at 120-123.* At trial, however, Mr. Banks only stated that the shooter was wearing sunglasses and a do-rag on his head (*Id. at 139*), and other evidence showed that the day of the shooting, Mr. Sirkaneo was bald and wore sunglasses, black jeans, a black top, and a black do-rag.

On direct examination, the prosecution posed this question to Mr. Banks: "I've shown you the sunglasses. I've shown you the do-rag. And I've shown you the gun. If those three items were being worn or held by anybody in this courtroom, do you recognize anybody who that could be?

prosecution "was fully conscious" that Mr. Banks could not identify him as the perpetrator but prompted him to do so at trial. *Id.* Because Mr. Sirkaneo failed to make a related objection at trial, the claim is procedurally defaulted. He argues, however, that appellate counsel's failure to pursue the unpreserved claim on direct appeal excuses his default.

The State may not introduce or elicit testimony known to be false, *Napue v. Illinois,* 360 U.S. 264, 269 (1959), or allow false testimony to stand uncorrected. *Giglio v. United States,* 405 U.S. 150, 154 (1972). However, to obtain relief for such conduct, a defendant must show that: (1) the State's case included perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) that there was a reasonable likelihood that the false testimony could have affected the judgment of the jury. *United States v. Agurs,* 427 U.S. 97, 103 (1976) (citations omitted).

Mr. Sirkaneo's claim fails under each prong. First, the only possible evidence of perjured testimony is that Mr. Sirkaneo wore all black the day of the shooting, which contradicted Mr. Banks' description of the shooter during a 911 call. Second,

---

Id. *at 148*. Mr. Banks, apparently pointing at Mr. Sirkaneo, answered, "That gentleman sitting over there with that white shirt on . . . . " *Id*.

On cross examination, Mr. Banks did not recall that in his 911 call, he described the shooter as a young black male with short hair, wearing a red shirt and blue jeans. *Id. at 149-151*. In his closing argument, Mr. Sirkaneo emphasized the discrepancy between Mr. Banks' description of the shooter to the 911 operator and evidence showing what Mr. Sirkaneo wore that day. *Doc. 18-7 at 407-408*.

the prosecution asked Mr. Banks whether he recognized anyone who "could be" the shooter, and Mr. Banks pointed to Mr. Sirkaneo. The prosecution did not ask Mr. Banks to positively identify Mr. Sirkaneo as the shooter, and Mr. Sirkaneo cannot show that the prosecution had reason to know that Mr. Banks' "could-be" identification was false. Finally, at trial, Mr. Banks highlighted the discrepancies between Mr. Banks' description of the shooter and what Mr. Sirkaneo actually wore the day of the shooting. Accordingly, Mr. Sirkaneo cannot show a reasonable likelihood that allegedly false testimony affected the judgment.

Appellate Counsel did not render ineffective assistance by failing to pursue an unpreserved, meritless claim on direct appeal, and Mr. Sirkaneo has failed to show cause and prejudice to excuse his procedural default.

### 3. Withholding Evidence

Mr. Sirkaneo claims that the prosecution withheld his book-in photograph in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). He argues that the photograph would have shown that clothing he wore at the time of his arrest did not match the description of the shooter obtained from eyewitnesses, including Mr. Banks. *Doc. 11 at 24-25*. Mr. Sirkaneo did not present this claim at any point in state court, but he asserts that counsel's failure to raise the claim on direct appeal excuses his default.[17]

---

[17] A *Brady* claim may sometimes itself provide cause to excuse a procedural default, but

A *Brady* violation has three essential elements: (1) the evidence at must be materially favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

Materially favorable evidence is that which "could reasonably . . . put the whole case in a different light as to undermine the confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). Here, evidence presented at trial demonstrated that Mr. Sirkaneo wore all black at the time of his arrest and that eyewitnesses reported that the shooter wore a red top and blue jeans. Mr. Sirkaneo's book-in photo would not have tipped the scales in his favor, and he suffered no prejudice as a result of its absence at trial.

For the reasons explained above, all of Mr. Sirkaneo's Claim 3 arguments should be dismissed, with prejudice.

### E.    Claim 4 is Not Cognizable In Federal Habeas

Mr. Sirkaneo asserts that evidence used against him was obtained as a result of his illegal arrest. He notes that he filed a related, pretrial motion to suppress in state court "giving the State . . . a full and fair opportunity to address the claim."

---

only where the State's suppression of evidence is the reason for the petitioner's default, which is not the case here.  Mr. Sirkaneo was obviously aware that the book-in photograph existed.

*Doc. 27 at 14*.

Federal review of Mr. Sirkaneo's Fourth Amendment claim is barred under the Supreme Court's holding in *Stone v. Powell:* "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. 465, 481–82 (1976). Under *Stone*, federal habeas review is barred absent a showing that the State either (1) provided no corrective procedure to address the alleged Fourth Amendment violation or (2) precluded the petitioner from utilizing that procedure "because of an unconscionable breakdown in the underlying process." *Chavez v. Weber*, 497 F.3d 796, 802 (8th Cir. 2007) (quoting *Willett v. Lockhart*, 37 F.3d 1265, 1271-72 (8th Cir. 1994)).

Mr. Sirkaneo's own allegations show that he received full and fair review of his Fourth Amendment claim in state court. Accordingly, his Fourth Amendment Claim is not cognizable in this federal habeas action and should be dismissed, with prejudice.

### F.    Claim 5 is Procedurally Defaulted

Mr. Sirkaneo claims that he was denied due process because the trial court entered judgment against him without a recorded verdict on accomplice liability. *Doc. 11 at 30*. The trial court instructed the jury on the question of Kipp Dolittle's

and Earl Smith's accomplice liability and explained that Mr. Sirkaneo could not be convicted based on the testimony of an accomplice, "unless that testimony [were] corroborated by other evidence tending to connect [Mr. Sirkaneo] with the commission of the offenses." *Id. at 375-376*. The verdict forms, however, did not require the jury to record whether it found accomplice liability.

Mr. Sirkaneo does not explain how the absence of verdict forms on accomplice liability violated his right to due process. In any event, he did not request such a verdict form at trial, nor did he assert the claim on direct appeal. The claim is therefore procedurally defaulted, and Mr. Sirkaneo fails to demonstrate either cause or prejudice to excuse his default.

Claim 5 should be dismissed, with prejudice.

### G.    Claim 6 Not Cognizable in Federal Habeas

Arkansas Supreme Court Rule 4–3(i) mandates review by the Arkansas Supreme Court of "all errors prejudicial to the appellant in accordance with Ark. Code Ann. § 16-91-113(a)." Section 16-91-113(a), in turn, provides that "where either a sentence for life imprisonment or death has been imposed the Supreme Court shall review all errors prejudicial to the rights of the appellant."

Mr. Sirkaneo argues that the Arkansas Supreme Court committed "fundamental error" in its Rule 4.3(i) review in his case by failing to "comply with its own rules of mandatory review." *Doc. 11 at 31*. According to Mr. Sirkaneo, the

court was required to "investigate the records" for all prejudicial errors and whether his convictions were supported by sufficient evidence. *Id*. The United States Supreme Court has never required the type of automatic, investigatory plain error review proposed by Mr. Sirkaneo, and the Arkansas Supreme Court has repeatedly held that Rule 4-3(i) does not mandate plain-error review and "presupposes that a proper objection was made at trial." *Terry v. State*, 600 S.W.3d 575, 580 (2020) (citing *Miller v. State*, 942 S.W.2d 825 (1997)).  In addition, a federal habeas court is without authority to second guess a state court's application of its own rules. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Claim 6 should be dismissed, with prejudice.

### H.    Mr. Sirkaneo's Stand-Alone Actual Innocence Claim, If Cognizable, Fails on the Merits

Mr. Sirkaneo asserts a freestanding claim that he is actually innocent of murder and attempted murder. It is not resolved whether such a claim is even cognizable. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). Regardless, Mr. Sirkaneo's failure to establish gateway actual innocence sufficient to excuse procedural default means that he cannot make the "extraordinarily high"

showing that would be required to establish a free-standing actual innocence claim.

*Dansby v. Hobbs*, 766 F.3d 809, 816 (8th Cir. 2014) (citations omitted).

## IV.   CONCLUSION

IT IS THEREFORE RECOMMENDED that:

1.     Petitioner Qatonious Lee Sirkaneo's § 2254 amended petition for writ of habeas corpus (*Doc. 11*) be DISMISSED with prejudice.

2.     A Certificate of Appealability be DENIED. *See* 28 U.S.C. § 2253(c)(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

Dated 17 October 2023.

UNITED STATES MAGISTRATE JUDGE